THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD MALKIEWICZ, JR., Defendant-Appellant.

Second District   No. 79-78

Opinion filed July 16, 1980.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was convicted by a jury in Lake County of rape, deviate sexual assault and armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1(a), 11—3(a) and 33A—2), and was sentenced to three concurrent terms of 30 years. The defendant raised 12 issues on appeal. We consider only two of those issues: whether the defendant's right to remain silent was violated by the prosecutor's elicitation on direct examination of testimony regarding, and closing argument comments on, the defendant's failure to make an exculpatory statement at the time of his arrest, and whether the defendant was denied a fair trial by the admission of testimony regarding the titles of four novels found in his car.

On the basis of those two issues, we hereby reverse the judgment of the circuit court and remand for a new trial pursuant to the authority cited below. Additionally, the defendant contends and the State concedes that the mittimus incorrectly shows the defendant was convicted on counts I, II and III, whereas the conviction was actually on counts I, III and IV. Accordingly, we vacate the judgment and sentence entered on count II and remand for a correction of the mittimus to reflect judgment and sentence entered on count IV. We decline to discuss the other errors raised by the defendant because he has waived same by failing either to

include or to particularize them in his post-trial motion and they do not constitute plain error. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) Further, we are confident the errors charged by the defendant will not occur on retrial.

The charges arose from an incident which occurred during the late evening hours of June 27, 1978, when the defendant allegedly bound and gagged the victim, a 19-year-old girl, threatened her life with a knife while she was tied naked to a tree, threatened to sodomize her and to force her into an act of fellatio, and then forcibly performed cunnilingus and raped her. The defendant then drove the victim to Richmond, Wisconsin, and dropped her off near some farm houses where she summoned aid. The defendant was arrested several days later in Ainsworth, Nebraska. Defendant and the victim were acquainted on three or four previous occasions. Earlier that evening at a game room in Mundelein, the victim and a girl friend met the defendant who was looking for a couple of his friends. The victim told the defendant they might be at a party in an abandoned building on some farm property in the Libertyville-Mundelein area, and the three of them drove there in the defendant's car. At the party, the defendant and victim both had about three or four beers to drink and the victim smoked from a bowl of pot that was being passed around. After the party broke up, the defendant invited one or two girls besides the victim to accompany him to another party which was to be held somewhere in Warren Township. Only the victim decided to go. Defendant then drove her to a wooded field where the above-described acts took place. The examination of the victim at St. Therese Hospital in Waukegan revealed red, swollen and tender external genitalia and sperm in the vagina. Numerous linear scratches and bruises were noted on the victim's wrists, arms, legs and shoulders. She led police to the location of the rape and her brassiere, which she had stated the defendant cut off her with the 3- to 3½-inch-bladed pocket knife he had threatened her with, was found there in the condition she described. Her comb, Newport cigarette package and red-and-white matchbook were also recovered from the scene. The victim's panties, which she had thought the defendant had also cut off her with the knife, and her car keys were later recovered from the defendant's car. The panties were not cut, however. Several strands of hair, consistent with the victim's hair but scientifically impossible to determine as specifically being hers, were found on a tree in the area.

The defendant stated the victim consented to the acts of cunnilingus and intercourse when they arrived at the supposed second party location, found no one there, and began kissing and petting. At the earlier party at the farm, defendant said it had been necessary on at least two occasions for him, the victim and some of the others to dive down in the weeds in

order to avoid detection by the security guard at the farm. They also had to climb a chain link fence to get out of the farm area. After defendant and the victim had intercourse, defendant testified the victim agreed to go with him to the Pell Lake area in Wisconsin where he thought there might be another party. They stopped at a tavern in Pell Lake to buy more beer and drove around looking for a party. An argument began, and defendant said the victim asked to be let out of the car immediately. Defendant could not remember what the argument was about. He complied with her request and let her out of the car. He then decided to drive to Denver to visit a friend. He did not return to his apartment before leaving, but he had told several people at the first party and, prior to that, had told two of the people he was living with, that he was planning to leave Illinois. Defendant pawned his CB radio in Sioux City, Iowa, for $20 and was finally apprehended in Ainsworth, Nebraska, where he was informed of the Illinois rape charge against him. When apprehended, the defendant had less than $5 cash on his person and was on a road approximately 145 miles from Interstate 80, which would have been the most direct route to Denver. During trial, defendant made motions for a directed verdict at the close of the State's, and then all of the evidence, which motions were denied. Defendant also made two motions for a mistrial which were likewise denied. The trial lasted three days, and after deliberating for approximately five hours, the jury returned verdicts of guilty on all charges. The defendant filed a timely post-trial motion, which was argued and denied prior to the imposition of the three concurrent terms of 30 years each. This appeal followed.

■■ We agree with the defendant's contention that the prosecution committed reversible error by eliciting direct testimony and commenting during closing argument on the defendant's failure to make an exculpatory statement at the time of his arrest. The following are pertinent portions of the record:

"[Prosecution on direct examination]
Q. To the best of your recollection, what did you first advise him of?
A. I advised Mr. Malkiewicz that he had been brought to the Sheriff's office as he was wanted in Illinois on a rape charge, and then I advised Mr. Malkiewicz of his rights.
Q. When you advised him he was wanted in Illinois on a rape charge, what, if any, reaction did you observe of the defendant?
A. The defendant remained calm, he didn't give any outward sign of anything, really.

[Prosecution during closing argument]
And I suggest that you can pay attention to what he was like

and what he said on the witness stand, the fact that he didn't smoke marijuana, and you know that he does like to have control. He likes that. He didn't lose control out in Nebraska when they picked him up on a rape charge and say, 'Oh, my God, what are you talking about? I didn't rape anybody.'

❉ ❉ ❉

So, what happens when he gets caught in Nebraska? He says, 'Oh, yeah,' he says 'I'll go back to Illinois. I don't know what this is all about.'

❉ ❉ ❉

What was his reaction when he was told he was wanted for rape? Did he say anything as I suggested earlier, like, you know, 'That's crazy. I never did anything like that. I may have gone up to Wisconsin and made love to a girl or made love in Illinois and traveled to Wisconsin, but I didn't do anything like that.' Nope. He just says, 'I'll be happy to go back to Illinois. I don't know what any of this is all about.'

❉ ❉ ❉ ."

Such testimony and comments have been found to be deprivations of the defendant's right to a fair trial in light of the insoluble ambiguity of a defendant's silence, either after (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240) or before (*People v. Beller* (1979), 74 Ill. 2d 514) *Miranda* warnings are given. Adhering closely to *Doyle*, Illinois courts have held it error to either elicit testimony that a defendant remained silent after arrest (*People v. Deberry* (1977), 46 Ill. App. 3d 719), or comment during closing argument that a defendant had failed to make the exculpatory statement at a previous time (*People v. Monaghan* (1976), 40 Ill. App. 3d 322). Prejudice to a defendant in such instances is even more damaging where, as here, the defendant's credibility was integral to his defense of consent, and the prosecution made other comments during closing argument to the effect that because the defendant was present during the entire trial, he fabricated his testimony in accordance with the testimony of the State's witnesses. See *People v. Upshire* (1978), 62 Ill. App. 3d 248.

We perceive that the prosecution's comments would naturally and necessarily have been taken by the jury to convey the single thought that if the defendant were innocent he would have so stated upon being informed of the charge against him. We further perceive this error cannot be dismissed as harmless beyond a reasonable doubt (*People v. Knippenberg* (1977), 66 Ill. 2d 276) in light of the fact that some of the evidence adduced at trial was ambiguous in that it indicated aggressive intercourse had occurred, but whether or not force amounting to rape was used turned primarily on the jury's assessment of the credibility of the victim versus that of the defendant.

■■ Likewise due to the ambiguity of the evidence and the importance of the defendant's credibility in this case, we cannot find that the error of allowing testimony and closing argument comments about the titles of four books found in the defendant's car was harmless, and choose to consider the merits of this issue pursuant to Supreme Court Rule 615(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)) since this issue was not specified in defendant's post-trial motion. The defendant was 29, the victim was 19. Over defendant's objections (later withdrawn), the prosecutor elicited direct testimony and commented twice during closing argument, with no objection, on the fact that four books were found as the result of the inventory search of the defendant's car. The testimony given only related to titles of the books: "Death List," "Trapped and Tied, Babysitters," "Tempting Teenagers," and "The Curious Nurse." The prosecution failed to show the books belonged to the defendant, when or if he had read the books, or what the contents of the books were. Thus, the books were not shown to have any relevance or materiality to the crime charged, nor to the defendant's state of mind. Neither were the books shown to be an instrumentality of the crime. We therefore perceive that the book titles were introduced solely to suggest to the jury that the bare circumstance of finding books with such titles in the defendant's car was indicative of the defendant's propensity to commit the crime. We consider such a trial tactic akin to those soundly and repeatedly condemned in cases such as *People v. Liapis* (1972), 3 Ill. App. 3d 864, *People v. Wilson* (1948), 400 Ill. 461, and *People v. Lewis* (1924), 313 Ill. 312. The introduction of the book titles to suggest criminal propensity presents a subtle threat to private possession of reading materials and strikes dangerously close to the heart of cherished first amendment freedom. Such a threat is not now and will not ever be taken lightly by this court. We determine that it was prejudicial and harmful error to allow the admission of such testimony.

The judgment and sentence entered on count II is vacated and the trial court is directed to correct the mittimus. The judgment on the verdict is reversed and the cause is remanded for a new trial.

Judgment and sentence on count II vacated and remanded with directions; judgment on verdict reversed and remanded for new trial.

LINDBERG and WOODWARD, JJ., concur.