THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ODESSA WHITE, Defendant-Appellant.

First District (1st Division)    No. 79-1506

Opinion filed December 1, 1980.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Lawrence Krulewich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Odessa White (defendant) was charged with the murder of George Butler. After a jury trial, she was found guilty of voluntary manslaughter. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).) She was sentenced to four years of felony probation with the first year to include periodic imprisonment. She appeals.

Defendant met the deceased in about 1970. They lived together from 1971 until his death on May 22, 1976. Apparently, their life together was a series of one-sided physical encounters. She described the deceased as "nice sober" and "mean drinking." On May 22, 1976, they were drinking and playing records. An argument ensued. The deceased wished to go out for more liquor and the defendant objected. Deceased told her he was going to whip her again. He seized her right arm, which he had recently injured, but she escaped into the bedroom. Defendant testified she lay on the bed for four or five minutes. She then got up and took a pistol from

the top of the dresser. The deceased came toward her "walking fast," and she shot him. He started running toward her, and she shot him again. The deceased then went outside. Defendant followed him through the front door. She then threw the gun away at the back of the apartment and reentered. She had obtained the gun from her aunt about two years previously. She stated the gun was for "protection" because "someone had already tried to break in."

On direct examination defendant further stated, "I wasn't intending to kill him, but I didn't want him to hurt me no more." She added, "I thought maybe if I shoot the first time he would go back. But instead of him going back, he started coming faster upon me."

About 6 p.m., police found the deceased sitting on a nearby curb bleeding profusely from the mouth. There was a trail of blood to the basement apartment where defendant lived. Defendant told police she had stabbed the deceased after an argument. There was blood on the floor leading to the kitchen. It appeared an attempt had been made to wipe up the blood on the kitchen floor with a mop. The defendant showed police a small steak knife which she said she had washed off. She said she had stabbed the deceased with it. However, later police told her they had been advised deceased had been shot. She then agreed she had shot him and said she gave the gun to an unknown black man in the alley. A search disclosed no gun.

After proper warnings, in an interview with an assistant State's Attorney, defendant made a written confession. This confirmed that the parties had been drinking for some time. Defendant stated she then went into the bedroom and armed herself with a gun. The deceased came out of the kitchen and through the dining room toward the bedroom. As he came through the dining room, she shot him once. The deceased said, "You shot me." Defendant said, "I told you I would shoot you." She entered the dining room and shot deceased two more times. Deceased then ran out of the apartment.

Defendant also testified she worked until 1974 when the deceased broke her ankle. She had been wearing a cast on her arm as a result of an altercation with deceased during which he had twisted her hand. She had a scar on her right arm some 2½ or 3 inches long resulting from surgery in connection with this injury. After this incident, the deceased kicked her elbow and dislocated it. This required a cast. At that time the deceased struck her face so that her eyes and mouth were swollen and she could neither see nor eat. On another occasion deceased struck her on the face with a bottle. This required surgery and stitches. The deceased struck her on the head with a car jack which scarred her. He struck her on the breast which ultimately required a surgical procedure for removal of a knot. He

threw her forcibly across a chair and caused four fractured ribs. During May 1976, she was taking medication for her "nervous" condition and headaches.

## I.

The first issue raised by defendant is reasonable doubt because the State failed to prove defendant did not reasonably believe she was obliged to shoot the deceased to prevent her own death or bodily harm.

■■ The Illinois statute, which codifies the theory of self-defense, requires defendant to believe that the force used is necessary "to defend himself or another against such other's imminent use of unlawful force." However, deadly force or that likely to cause great bodily harm is permissible only if a defendant "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 7—1.) Therefore, to determine whether a killing was justified under self-defense, the court must inquire "whether defendant's belief that he had to use deadly force was reasonable under the circumstances." (*People v. Smith* (1978), 58 Ill. App. 3d 784, 789, 374 N.E.2d 1285, *appeal denied* (1978), 71 Ill. 2d 613, *cert. denied* (1979), 440 U.S. 973, 59 L. Ed. 2d 790, 99 S. Ct. 1539.) "This is a question to be determined by the trier of fact and his finding will not be set aside on review unless the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt." *Smith*, 58 Ill. App. 3d 784, 789.

Self-defense is an affirmative defense. (*People v. Saunders* (1974), 18 Ill. App. 3d 117, 121, 309 N.E.2d 350; Ill. Rev. Stat. 1979, ch. 38, par. 7—14.) Defendant must present "some evidence" of self-defense. (Ill. Rev. Stat. 1979, ch. 38, par. 3—2(a).) Once defendant affirmatively has done so, "the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." *People v. Williams* (1974), 57 Ill. 2d 239, 242, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

In the case before us, it appears the defense is predicated primarily upon the history of the relationship between these people. In this regard it must be remembered that "[t]he right of self-defense does not justify an act of retaliation or revenge." *People v. Woods* (1980), 81 Ill. 2d 537, 543, 410 N.E.2d 866, and cases there cited.

A case rather close on the facts to the one before us is *People v. Dillon* (1962), 24 Ill. 2d 122, 180 N.E.2d 503. Defendant and other witnesses testified to brutal treatment of defendant by the husband for a period of six years. The supreme court affirmed the conviction for murder using this language (*Dillon*, 24 Ill. 2d 122, 125-26):

"[T]he right of self-defense does not imply the right of attack in the

first instance or permit action done in retaliation or revenge. (*People v. Gibbs* [1932], 349 Ill. 83, [181 N.E. 628]; *People v. Andrews* [1927], 327 Ill. 162, [158 N.E. 462].) While there is much testimony indicating that defendant had frequently been physically mistreated by her husband, that is not the question here. The question is, rather, whether the evidence shows that, at this particular instant, her husband had made an unprovoked assault upon her which put her in reasonable fear of imminent death or great bodily harm which could be avoided only by stabbing him."

■■ In the instant case there is evidence that defendant went into the bedroom where she obtained the gun. In her confession she said the deceased came out of the kitchen and came through the dining room toward the bedroom, and she shot him once. She then entered the dining room and shot him two more times. However, she testified that deceased first came toward her "walking fast" and she shot him. He then started running toward her and she shot him twice again. Her testimony thus differs from the statement made in her confession. In addition, she was less than candid in her statements to the police. We have here an issue of fact involving credibility which was submitted to the jury. "Whether a killing is justified under the law of self-defense depends upon the surrounding facts and circumstances and is to be determined by the trier of fact." (*Woods*, 81 Ill. 2d 537, 542.) The jury was fully informed of all of the facts and circumstances including the previous brutal treatment of defendant. The jury determined beyond a reasonable doubt that defendant's belief that the use of force was necessary to prevent her own death or great bodily harm was not a reasonable belief. We cannot say that the evidence of guilt here is so improbable as to justify a reasonable doubt of guilt. (*People v. Owens* (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465, *cert. denied* (1977), 430 U.S. 955, 51 L. Ed. 2d 805, 97 S. Ct. 1600; see also *People v. Diaz* (1976), 38 Ill. App. 3d 447, 453, 348 N.E.2d 199, *appeal denied* (1976), 63 Ill. 2d 559.) On the contrary, the guilt of defendant and the absence of any legitimate right to self-defense has been proved beyond any reasonable doubt.

The thinking of every reasonable person must necessarily produce deep sympathy for any human being subjected to humiliation and painful injury as was this defendant. However, this court is duty bound to measure and evaluate the legal right of self-defense by the situation which existed when the malefactor was killed. Any other course would be pure anarchy and cannot be tolerated.

## II.

The defense called Dr. Arthur Savitt, a well-trained physician of considerable experience. He has practiced internal medicine for primary

care since 1962. He commenced treating defendant in 1975. She had an anxiety depression or abnormal melancholy. The doctor prescribed a tranquilizer called valium and also a depressant drug. He hospitalized the defendant in January 1976 for a possible ulcer. He described various scars on defendant's person. He noted that on May 7, 1976, she had a fractured wrist for which a cast had been applied by another doctor. Predicated upon the pathological report, the witness expressed the opinion that the deceased was moderately intoxicated and definitely under the influence of alcohol.

The doctor also testified that during his practice he had "occasion to treat battered women." Counsel for defendant then asked if battered women "tend to remain with their mates." The trial court sustained an objection. Defendant urges this ruling was error and the issue as to whether or not "battered women" tend to remain with their mates had a direct bearing on the credibility of the defendant as regards her claim of self-defense. We disagree.

In our opinion the State correctly contends that evidence is required to be relevant and material (*People v. Miller* (1977), 55 Ill. App. 3d 136, 139, 370 N.E.2d 639) and should be excluded where it would serve no useful purpose (*People v. Lewis* (1976), 38 Ill. App. 3d 995, 998, 349 N.E.2d 528) or "if it has no legitimate bearing upon, or relation to, any fact or issue in the case" (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 559, 411 N.E.2d 217). The opinion of the doctor in this case upon the question put to him was neither relevant nor material and it would serve no useful purpose. The trial court gave defendant a good degree of latitude in bringing before the jury the background of the relationship between the two people involved with reference to the brutal treatment which defendant suffered. However, as above shown the issue of self-defense should be determined by the trier of fact upon the evidence of what transpired during the "particular instant" in which the death was caused. See *Dillon*, 24 Ill. 2d 122, 126.

Defendant cites *Ibn-Tamas v. United States* (D.C. App. 1979), 407 A.2d 626. That decision does not assist defendant. There, the expert witness was a clinical psychologist who had studied the cases of 110 battered women. Apparently, this expert had examined the defendant from a psychological point of view because the defense sought to elicit her opinion as to "the extent to which appellant's personality and behavior corresponded to those of 110 battered women Dr. Walker had studied." (407 A.2d 626, 631.) The trial court excluded this testimony. The District of Columbia Court of Appeals did not reverse the conviction but remanded the case for further consideration by the trial court of admissibility of the evidence.

■■ Consequently, the trial judge in the instant case acted correctly in rejecting the proffered opinion.

## III.

At the conclusion of the doctor's testimony, he stated defendant disclosed to him the source of her various traumatic injuries. The trial judge sustained an objection as to the nature of the source.

■■ The trial court here admitted considerable testimony by defendant as to the various physical beatings which she suffered at the hands of the deceased. Therefore, any testimony by the doctor as to the source of her physical injuries was cumulative and hence was properly excluded. The trial court correctly permitted the defendant to testify in detail as to her mental state and her intention at the time of the shooting. Thus, the entire matter was properly presented to the jury. We find no reversible error in this regard.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.