THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ADA VIOLET ADAMS, Defendant-Appellant.

Second District    No. 80-389

Opinion filed December 21, 1981.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Ada Violet Adams, was convicted of murder and sentenced to 25 years imprisonment. She appeals, contending (1) the prosecutor improperly referred to her post-arrest silence during cross-examination and in argument to the jury; (2) the trial court erred in the admission and exclusion of evidence; and (3) she lacked effective assistance of trial counsel.

The evidence adduced at trial disclosed that defendant and Glenn Marshall had been living together for about a year after meeting in a bar. On the evening of December 4, 1979, they had gone separately to taverns in Oregon, in the first of which defendant told Marshall not to follow her around and complained of his treatment of her. She also allegedly commented she was "going to kill that son of a bitch." They were later both in a second tavern, where Marshall mentioned they argued frequently and he was going to leave her. After Marshall left that tavern defendant allegedly again stated she was going to kill him.

Marshall returned home and at 11:02 p.m. telephoned his former wife, Betty Marshall, in Memphis, Tennessee. She testified that he told her in that conversation he wanted to come home to her and his children and referred to the possibility of his death. They were still on the telephone at 12:10 a.m. when Betty Marshall heard banging on his door and heard defendant asking him who he was talking to before Marshall's telephone was hung up at 12:15 a.m. Telephone company records also disclosed at 12:16 a.m. defendant called the Ogle County Sheriff's Department requesting officers be sent to her home in Oregon because she had stabbed a man. Officers arriving at the home where she lived with Marshall found him lying on the floor with four stab wounds. The officers checked defendant for weapons and told her to sit in a chair; they observed a bloody knife beneath another chair. They administered aid to Marshall who was subsequently pronounced dead on arrival at the

hospital. When they then asked defendant what had happened, she responded, "he can't be dead" several times, but did not reply to their inquiries concerning the stabbing. The officers telephoned the sheriff for instructions and were directed to take defendant into custody; she was then placed in a squad car and given the *Miranda* warnings. The officers drove defendant to the sheriff's office, where at about 1 a.m. Sheriff Jerry Brooks advised her that Marshall was dead and that she was under arrest for murder; he again informed her of her *Miranda* rights. Defendant requested that her cigarettes, glasses and purse containing her identification be returned to her, but did not refer to the occurrence in her home. At about 2 a.m. Deputy Sheriff Melvin Messer again advised defendant of her rights and she gave him a statement in which she described a history of violence towards her by Marshall and said she had stabbed him in self-defense when he attacked her that night. Her statement was not offered in evidence by the prosecution in trial, and that portion in which she had related to the officers that she had stabbed Marshall in self-defense was suppressed by the trial court as self-serving on the State's motion *in limine*.

Sheriff Brooks saw defendant again in the jail later that morning when she talked to him about the incident and told him that Marshall had struck her on prior occasions and that she had him arrested.

Defendant testified in trial and on direct examination stated that she had been living with Marshall since 1978 and he had beaten her on several occasions during that period. She stated that on the night in question she had stabbed him when he swore at her and came at her with his hands on her throat, believing he was going to kill her. On cross-examination of defendant, the State's Attorney inquired whether the first time she had mentioned self-defense to anyone was after she was informed that Marshall was dead and she was arrested for murder. She agreed that was true and that she had not mentioned it to the telephone operator. Sheriff Brooks was called in rebuttal by the State and testified that on December 5, 1979, at 12:52 a.m. defendant was brought into his office, advised that Marshall was dead and arrested for murder. He further testified that the first time defendant talked to him about details of the incident was after 10:35 a.m. that day. In closing argument the State's Attorney commented that at the scene when the officers asked defendant what had happened she responded only with a request for her glasses and cigarettes; that when she was informed Marshall was dead and she was arrested for his murder she again responded with a request for her glasses and cigarettes and would not speak with the sheriff. The State's Attorney also noted in argument to the jury "nothing is stated by her until 10 o'clock the next morning when she comes back with the statement, 'I had to do it. I had to do it in self defense.' Don't you think that if you were attacked and you

were put in a situation like that, that the first thing you would do would be to thank God that you were here, he grabbed me, he was at my throat. That's just not true and it wasn't said * * *.''

We consider first whether defendant was denied due process by the use by the State's Attorney of her post-arrest silence to impeach her exculpatory self-defense testimony at trial. Defendant failed to object to either the cross-examination or argument of which she now complains, although the issue was raised in her supplemental post-trial motion. We believe, however, that fundamental fairness requires that the waiver rule not be applied and that the matter be considered as plain error. *People v. Green* (1979), 74 Ill. 2d 444, 449-50, 386 N.E.2d 272, 275.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244, the United States Supreme Court noted that every post-arrest silence is insolubly ambiguous because of the requirement that the State must advise a person arrested of his right to remain silent, and it is a violation of due process to either elicit testimony that a defendant remained silent after arrest or to impeach a defendant who offers an exculpatory story at trial with his failure to offer that story to police following his arrest. (*People v. Malkiewicz* (1980), 86 Ill. App. 3d 417, 421, 408 N.E.2d 47, 50; *People v. Foster* (1980), 81 Ill. App. 3d 915, 926, 401 N.E.2d 1221, 1229.) There are circumstances, however, in which the State may permissibly comment on post-arrest silence; if the defendant at trial falsely claims that he also gave his exculpatory statement to the police when arrested he may be impeached with evidence that he did not do so. (*People v. Rehbein* (1978), 74 Ill. 2d 435, 441-42, 386 N.E.2d 39, 42, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843.) Also, if defendant's exculpatory testimony at trial is manifestly inconsistent with statements he made after his arrest, comment or evidence about his failure to give the same statement at that time will not violate the *Doyle* rule. *People v. Beller* (1979), 74 Ill. 2d 514, 522-23, 386 N.E.2d 857, 860.

The defendant argues the *Doyle* rule was violated in her cross-examination by the State, by the testimony of Sheriff Brooks in rebuttal and in the State's Attorney's argument to the jury.

We note first that *Doyle* becomes operative only after arrest and reference to a defendant's silence prior to arrest for impeachment does not violate the fifth or fourteenth amendments. (*Jenkins v. Anderson* (1980), 447 U.S. 231, 239, 65 L. Ed. 2d 86, 95, 100 S. Ct. 2124, 2129; *People v. Williams* (1978), 65 Ill. App. 3d 1, 5, 382 N.E.2d 292, 294-95.) Although defendant was not formally arrested until the sheriff did so at his office at about 1 a.m., it is apparent *Doyle* became operative when she was restrained at the scene and placed in the squad car and advised of her *Miranda* rights. (See *People v. Creach* (1980), 79 Ill. 2d 96, 100-01, 402 N.E.2d 228, 230, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101

S. Ct. 564; *People v. Wipfler* (1977), 68 Ill. 2d 158, 166, 368 N.E.2d 870, 873; *People v. Jacobs* (1979), 67 Ill. App. 3d 447, 449, 385 N.E.2d 137, 139-40, *appeal denied* (1979), 75 Ill. 2d 592.) In cross-examination the State's Attorney inquired whether the first time defendant mentioned self-defense was after she was arrested for murder. As this questioning did not refer to defendant's post-arrest silence and implied only that she did not give her exculpatory story before her arrest, it was a proper inquiry under *Doyle*.

■■ The rebuttal testimony of Sheriff Brooks and the argument of the State's Attorney, however, clearly combine to violate the *Doyle* doctrine. The sheriff testified that he arrested defendant at 12:52 a.m. in his office and the first time she talked to him about the details of the matter was after 10:35 a.m. that morning. The State's Attorney commented at some length in argument that after her arrest defendant spoke only of wanting her glasses and cigarettes and that she stated nothing about self-defense until 10 o'clock in the morning. (This argument is difficult to understand in view of the statement given by defendant to deputy sheriffs at 2 a.m. in which she first described an attack upon her by Marshall and stated she stabbed him in the belief he was going to kill her; a statement substantially the same as her testimony in trial, but suppressed on motion of the State as self-serving.)

There was no inconsistency between defendant's trial testimony and her exculpatory statements to the investigating officers, nor did she claim to have given any exculpatory statements immediately following her arrest. As the exceptions to the *Doyle* rule are not applicable to this case, it was error for the State in argument to question her silence after arrest. By that means the State suggested to the jury that if defendant were innocent she would have so informed the officers immediately after her arrest, and it gave the jurors a basis from which they might conclude that her defense in trial was fabricated. Nor can this error be considered as harmless beyond a reasonable doubt (*People v. Knippenberg* (1977), 66 Ill. 2d 276, 287, 362 N.E.2d 681, 685-86), as it reached the crux of the defense offered in this case, *i.e.*, whether defendant was credible and justified in stabbing and killing Glenn Marshall or whether the degree of the offense should have been reduced. See *People v. Malkiewicz* (1980), 86 Ill. App. 3d 417, 421, 408 N.E.2d 47, 49-50.

As this case must be reversed and remanded for a new trial, we will consider other issues raised by defendant which may arise on retrial.

Defendant called a psychiatrist who had examined her and who testified that she was sane. Defense counsel then sought to further elicit an opinion from the doctor as to why the stabbing had occurred and inquired whether he had reached any conclusion with regard to defendant's personality based upon interviews with her. The State's objection

that it was not relevant was sustained, and she asserts she was thus precluded from offering expert testimony relating to the personality traits of abused women in support of her claim of self-defense. See *Ibn-Tamas v. United States* (D.C. App. 1979), 407 A.2d 626; compare *People v. White* (1980), 90 Ill. App. 3d 1067, 1072, 414 N.E.2d 196, 200.

Defendant, however, failed to make an offer of proof in the trial court so as to preserve for review her claim of error by exclusion of this evidence. (See *People v. Christen* (1980), 82 Ill. App. 3d 192, 196, 402 N.E.2d 373, 376; *People v. Limas* (1977), 45 Ill. App. 3d 643, 649, 359 N.E.2d 1194, 1199, *appeal denied* (1977), 66 Ill. 2d 627.) There was nothing presented to the trial court to assist it in initially ascertaining the admissibility of the evidence sought to be introduced, and it cannot be determined from the trial record that the "personality" of defendant was material and relevant to her defense so as to excuse tender of an offer of proof. (See *People v. March* (1981), 95 Ill. App. 3d 46, 56, 419 N.E.2d 1212, 1219; *People v. White* (1980), 90 Ill. App. 3d 1067, 1072, 414 N.E.2d 196, 200; *People v. Johnson* (1977), 47 Ill. App. 3d 362, 372, 362 N.E.2d 701, 709; *People v. Moore* (1975), 27 Ill. App. 3d 337, 344, 326 N.E.2d 420, 425, *appeal denied* (1975), 60 Ill. 2d 600.) We conclude defendant has not preserved this issue for review.

■■ Defendant also contends the trial court erred in excluding evidence of the level of alcohol in decedent's body asserting it was relevant to her claim of self-defense. She had testified that Marshall had made prior attacks upon her when he had been drinking and offered the testimony of Dr. John Spikes, a toxicologist, in support of her defense. In this instance defendant did make an offer of proof of the excluded testimony by which Dr. Spikes would have stated the alcohol content of decedent's blood was .23% and that he was under the influence of alcohol at the time of his death.

The trial court found that defendant offered an insufficient foundation for the witness' testimony and also had not shown its relevancy. We agree the foundation was inadequate. This witness had not personally conducted the tests in question, nor was he asked whether he was qualified by training or experience to give the opinions sought from him by defendant. The witness did describe an impressive educational background and his position as chief toxicologist of the Division of Laboratories of the Department of Health. He described his duties, however, only as the direction of the performance of analytical services for agencies submitting samples to the laboratory. Defendant failed to ask Dr. Spikes to provide any direct basis for his qualifications to express the opinions sought from him. (*People v. Driver* (1978), 62 Ill. App. 3d 847, 853, 379 N.E.2d 840, 845.) On objection, the trial court did not err in excluding the testimony on the grounds of insufficient foundation.

■■ We find the court erred, however, when it determined that evidence of decedent's intoxication would not be relevant in this case. Relevancy is established if the offered evidence tends to make a proposition at issue more or less probable. (*People v. Kavinsky* (1981), 98 Ill. App. 3d 579, 584, 424 N.E.2d 340, 344; *People v. Yuknis* (1979), 79 Ill. App. 3d 243, 248, 398 N.E.2d 258, 262.) The relevance of evidence of a possible defense is a matter for the sound discretion of the trial court. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 537-38, 362 N.E.2d 14, 20.) Defendant had presented evidence that on numerous prior occasions Marshall had beaten her when he had been drinking. The State had also presented evidence through witnesses who had observed Marshall in the taverns that night that he had not been drinking and so argued to the jury. The excluded testimony, if offered with the proper foundation, would have established that Marshall was intoxicated and may have assisted the jury in its evaluation of the evidence presented in this case. See *People v. Rice* (1976), 40 Ill. App. 3d 667, 671, 352 N.E.2d 452, 455-56.

Defendant has also contended that the trial court erroneously permitted Betty Marshall to testify regarding her telephone conversation with decedent shortly before his death. She argues it was hearsay and was improperly used by the State to establish motive on the part of the defendant. Betty Marshall testified that decedent called her to say he wanted to leave defendant and return to Betty. The trial judge admitted the conversation for the limited purpose of showing decedent's intent; however, in argument to the jury the State's Attorney urged that it was evidence of defendant's motive in killing Marshall.

■■ Out-of-court telephone conversations can be competent evidence to show intent or state of mind of decedent as an exception to the hearsay rule. (*People v. Fletcher* (1978), 59 Ill. App. 3d 310, 322, 375 N.E.2d 1333, 1340, *appeal denied* (1978), 71 Ill. 2d 611; *People v. Reddock* (1973), 13 Ill. App. 3d 296, 309, 300 N.E.2d 31, 38, *appeal denied* (1973), 54 Ill. 2d 598.) The identity of the declarant, his unavailability at trial and the likelihood of the truth of the hearsay statement must be shown. *People v. Goodman* (1979), 77 Ill. App. 3d 569, 574, 396 N.E.2d 274, 278; *People v. Schwartz* (1975), 34 Ill. App. 3d 1043, 1044, 340 N.E.2d 583, 584; *People v. Reddock.*

■■ Betty Marshall testified she recognized her former husband's voice and it was he with whom she spoke on the telephone. It does not appear likely he would so inform her of plans to return to her if he did not then intend to do so nor are reasons apparent why Betty Marshall would misrepresent that conversation in these circumstances. (See *People v. Mireles* (1979), 79 Ill. App. 3d 173, 196-97, 398 N.E.2d 150, 166, *cert. denied* (1980), 449 U.S. 860, 66 L. Ed. 2d 76, 101 S. Ct. 163.) Earlier in the evening in a tavern decedent stated he was going to "get shed of [defendant]" or "ship her" and the witnesses who so testified stated

defendant was nearby and could hear the remarks. Shortly before the telephone call was terminated by disconnection in the decedent's home Betty Marshall heard defendant ask decedent who he was talking to and defendant inquired into the telephone: "Who is this? Is this you?"

We conclude that the trial court did not err in admitting the conversation in evidence for the purpose of showing decedent's state of mind immediately prior to his death. Nor is the State precluded from raising the inference of decedent's motive in argument in view of the further evidence defendant was aware of decedent's plans to leave her. Compare *People v. Newbury* (1972), 53 Ill. 2d 228, 240, 290 N.E.2d 592, 598-99; *People v. Gougas* (1951), 410 Ill. 235, 238, 102 N.E.2d 152, 154; *People v. Fletcher* (1978), 59 Ill. App. 3d 310, 322, 375 N.E.2d 1333, 1340.

Defendant has also asserted as grounds for reversal of her conviction that she lacked effective assistance of counsel at trial. She notes that her counsel, who is the public defender of Ogle County, admitted his inadequacy in the post-trial motion and in argument to the jury. Defendant further asserts that inadequacy was further demonstrated by counsel's conduct of the trial. As we have reversed on other grounds we need not consider this argument. On retrial, however, counsel other than her former attorney must represent defendant. See *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157; *People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178.

Accordingly, the judgment of the circuit court of Ogle County is reversed and this cause remanded for a new trial.

Reversed and remanded.

REINHARD and VAN DEUSEN, JJ., concur.