THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OTIS EVANS, Defendant-Appellant.

Second District    No. 79-717

Opinion filed January 27, 1981.

Mary Robinson and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

The defendant, Otis Evans, was found guilty of murder by a jury in the circuit court of Lake County and later sentenced to 40 years imprisonment. He appeals his conviction and contends that: (1) the court erred in denying his pretrial motion *in limine* to preclude the State from using at trial a 1972 conviction for voluntary manslaughter; (2) the jury's verdict finding him guilty of murder was against the manifest weight of the evidence in view of evidence of voluntary manslaughter.

On the evening of October 14, 1978, the defendant, Otis Evans, and the victim, James McNulty, were at the Belvidere Club, a tavern located in the city of Waukegan, Lake County, Illinois. The facts reveal that both arrived separately around 11 p.m., that they had known each other prior

to this night and that they engaged in a conversation at the bar just prior to the shooting. The testimony of Willie Pittman, the key prosecution witness, was that he was standing at the bar of the Belvidere Club at about 11:40 p.m. and observed the defendant sitting to his right. He further saw McNulty come over to the bar, say something to the defendant and the defendant said "Nigger, I'll kill you," twice, to McNulty. The defendant told another person at the bar to move. At that time, Pittman was within arms length of both men and they were about four feet apart from each other. Pittman testified he saw the defendant reach underneath his coat bring up a weapon, cock and fire it. He saw McNulty's head jerk backward and forward, and he was close enough to the weapon to feel a slight burning sensation on his cheek from the muzzle flash. At that time, the witness began to back up and observed a second shot fired lower by the defendant at McNulty, who then lunged forward and struggled with the defendant. As Pittman retreated to the other end of the bar, he then heard four more shots, but didn't see where they came from. At no time did he see a weapon in McNulty's hand, and he denied telling an investigating officer that McNulty and defendant were having an argument immediately prior to the shooting.

No other witness, other than the defendant, was able to testify to any of the important events just prior to the shooting. However, a Nancy McCloud did testify that she heard shots and saw the defendant back out of the front door with a gun in his hand. Yvonne Jackson, who lived with McNulty, had come with him that night, but was not with him just prior to the shooting. She did testify that she heard a gun shot, observed McNulty and the defendant struggling, then heard two more shots and saw McNulty fall over onto the floor. She went to him and the defendant told her "Don't touch the SOB, son-of-a-bitch" and then left. A paramedic, Gary Hampson, was called to the scene and after checking McNulty observed no vital signs and saw no weapons in the area of the body. Other police officers testified they found no weapon at or near the scene. Chemists from the Northern Illinois Crime Lab testified that two bullets removed from the body came from the same .22-caliber weapon and that the wound to the left flank was a close contact wound. The defendant was arrested without resistance at 3 a.m. the next morning. An autopsy was performed later on McNulty by Eupill Chois, a pathologist. He testified to one bullet entry wound in the mouth, a bullet wound in the left back behind the arm pit and a third wound in the left flank, with cause of death being the bullet wounds of the chest and mouth with penetration in the lung and aorta.

The defendant testified that two weeks prior to October 14, 1978, McNulty stopped by where he worked and told him "something bad is going to happen to you" and "I should beat you up." He also testified that

he was afraid of McNulty because he knew McNulty had a gun. As to the events on October 14, 1978, just prior to the shooting, the defendant's version was that he and McNulty argued about club dues, that McNulty told him "something bad is going to happen to you" and then struck the defendant in the face. At that time, the defendant said he pulled his gun because he was afraid of McNulty, they struggled over the gun and one shot went off. The defendant does not remember anything further concerning the fight nor where he later put the gun, a .22-caliber pistol. He did not see any weapon on the deceased that evening. The defense also called police officer Bullock, who testified that McNulty had a reputation for carrying a gun, and police officer Miscickowski, who testified that prosecution witness Pittman told him that the deceased and defendant were engaged in an argument. At the end of the testimony, the court allowed the State to introduce into evidence a certified copy of a conviction against the defendant for voluntary manslaughter on November 15, 1972. Although the defendant had only been charged with murder, the trial judge upon request of the defendant instructed the jury on the alternate verdict of voluntary manslaughter. The jury returned a verdict against the defendant for murder.

First, we address ourselves to the issue of the State's use of a 6½-year-old conviction for voluntary manslaughter for impeachment purposes against the defendant. Prior to trial, the defendant made a motion *in limine* to preclude the State from introducing evidence of the defendant's prior conviction for voluntary manslaughter, arguing that any positive probative value the conviction would bring was far outweighed by its prejudicial effect, to-wit, its similarity to the murder charge upon which he was being tried. The trial judge denied the motion, finding that the prior conviction was probative as to the defendant's credibility.

■■ As recently clarified in *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283, the use of a prior conviction for impeachment purposes is governed by proposed Rule 609 of the Federal Rules of Evidence which had been proposed by the committee on Rules of Practice and Procedure of the Judicial Conference of the United States in the form set out in *People v. Montgomery* (1971), 47 Ill. 2d 510, 516-17, 268 N.E.2d 695. Under the *Montgomery* rationale, the court is to determine whether the crime falls within the purview of proposed Rule 609(a)(1) of (2); that is, whether the crime is either one punishable by death or imprisonment in excess of one year, or is a crime involving dishonesty or false statement. Evidence of conviction of a felony punishable by death or imprisonment in excess of one year is admissible under proposed Rule 609(a)(1) independent of the requirement of dishonesty or false statement in proposed Rule 609(a)(2) and is presumed to relate to testimonial deceit.

(*People v. Spates* (1979), 77 Ill. 2d 193, 202-04, 395 N.E.2d 563.) However, the conviction is inadmissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date as prescribed by proposed Rule 609(b), as set forth in *Montgomery.* Unquestionably, the defendant's prior conviction here is for a felony, voluntary manslaughter, which carries a possible penalty in excess of one year and meets the 10-year time limitation. Then it is the province of the trial court to weigh the probative value of a conviction against the potential for unfair prejudice which might result and, in appropriate cases, refuse to admit evidence of a conviction. (*Spates*, at 205.) The various factors for the trial judge to consider are the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the person, and whether the crime was similar to the one charged. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518, 268 N.E.2d 695.) The issue here is whether the trial judge abused his discretion in denying the motion *in limine* and allowing the prior conviction.

■■ A prior conviction for manslaughter introduced against the defendant in his murder trial has been held not to be an abuse of discretion and bears directly on the credibility of his evidence supporting his justification for killing. (*People v. Blythe* (1974), 17 Ill. App. 3d 768, 308 N.E.2d 675.) And the fact that the prior conviction and the present charge are similar in nature does not prohibit the introduction of the prior conviction for impeachment purposes. (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251; *People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810.) In the instant case, the trial judge thoughtfully made his ruling after lengthy arguments of counsel, the prior conviction was 6½ years old—well within the 10-year time limitation—and his defense was based upon a disputed version of what occurred just prior to the shooting, which bears directly on his veracity. Moreover, the jury was given a limiting instruction that the previous conviction was to be considered only as it affected his credibility and not as evidence of guilt of the crime with which he was charged. Under the circumstances presented here, we believe the trial judge carefully balanced the impeachment value of the prior conviction against the prejudice to the defendant and did not abuse his discretion under the requirements of *Montgomery.* As this court held before, a trial judge must be given considerable latitude in making this decision. *People v. Lighthart* (1978), 62 Ill. App. 3d 720, 723-24, 397 N.E.2d 403, *appeal denied* (1978), 71 Ill. 2d 619.

■■ Next, the defendant contends that under the evidence there was insufficient proof of intent to commit murder, and the jury should have

returned a verdict of voluntary manslaughter. To justify a conviction for a murder it is not necessary to show that the accused deliberately formed the intent to kill, but it is sufficient to imply intent to murder by showing voluntary and willful commission of an act, the direct and natural tendency of which is to destroy another's life. (*People v. Davis* (1966), 35 Ill. 2d 55, 219 N.E.2d 468.) While malice is an essential element of murder, it may be expressed or implied from the character of the act. (*People v. Winters* (1963), 29 Ill. 2d 74, 193 N.E.2d 809.) Further, intent to take a human's life may be inferred from such circumstances as the use of a deadly weapon. (*People v. Muldrow* (1975), 30 Ill. App. 3d 209, 332 N.E.2d 664.) Where the evidence is conflicting, it is for the trier of fact to determine whether a homicide is murder or manslaughter. (*People v. Davis* (1966), 35 Ill. 2d 55, 219 N.E.2d 468; *People v. Cowen* (1979), 68 Ill. App. 3d 437, 442, 386 N.E.2d 435; *People v. Foster* (1976), 43 Ill. App. 3d 490, 356 N.E.2d 1288.) From a reading of the above summary of the trial testimony, there is ample evidence from which the jury could have concluded that the defendant shot the deceased without serious provocation. The jury obviously chose to believe the State's version of the killing, and we find there is sufficient evidence that the defendant threatened the unarmed victim, pulled a weapon and shot him at close range before any struggle ensued to support a verdict of guilty of murder. Further recitation of the relevant facts of the shooting is unnecessary, as they are adequately described above and are quite substantial to sustain a jury verdict of murder. While the defendant's own story differs, it is the function of the jury to resolve the conflicts and determine the credibility of the witnesses. (*People v. Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296.) A reviewing court will disturb a finding of guilty only where the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) Here the evidence leaves no reasonable doubt of the defendant's guilt of murder.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.