THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY GRAVES, Defendant-Appellant.

First District (5th Division)  No. 83—2958

Opinion filed April 11, 1986.

886

James J. Doherty, Public Defender, of Chicago (Donald L. Bertelle, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Sheila Rudin, Michael E. Shabat, and David A. Cuomo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with the offenses of murder and armed violence. Following a jury trial, defendant was found guilty of murder and sentenced to a term of 22 years' imprisonment in the Illinois Department of Corrections. Defendant appeals from the decision of the trial court alleging that numerous instances of prosecutorial misconduct and judicial error warrant the reversal of his conviction.

We affirm.

On November 7, 1982, George Grant was stabbed in the chest. Shortly thereafter he died as a result of the wounds received during the assault. The incident leading to George Grant's demise occurred on a street corner where the victim, defendant, and several of their friends had gathered after attending a party at a nearby residence. All were members of an inner-city gang known as the Black Disciples.

A follow-up investigation of the murder implicated defendant. The police issued a warrant for defendant's arrest upon failing to locate

him for questioning. It was not until November 12, 1982, five days after the killing, that defendant was apprehended when he surrendered himself to the police.

While in custody, defendant confessed to the stabbing murder of George Grant. He also informed police that he had been "high" on alcohol and pills at the time of the stabbing. At his trial for murder, the defendant contended for the first time that the killing had been carried out in self-defense.

Following his conviction for murder, defendant was sentenced to 22 years' imprisonment. Defendant appeals from the decision of the trial court on the basis that the State impermissibly (1) used his post-arrest silence for impeachment purposes; (2) insinuated that his defense of self-defense was fabricated; (3) commented that its key witness, Christopher Bates, testified despite threats of violence; (4) commented on inadmissible evidence in order to bolster its key witness' credibility; and (5) misstated the law resulting in the reduction of the State's burden of proof. Additionally, defendant contends that the trial judge improperly (6) excluded evidence of the victim's prior conviction for burglary; and (7) allowed defendant's prior conviction to go to the jury as an aggravated battery, rather than an unspecified felony.

OPINION

Defendant initially contends that the State improperly cross-examined him regarding his post-arrest silence and commented upon the same in closing arguments all in contravention of the rule enunciated by the Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The State argues that no error was committed since (a) what defendant characterizes as post-arrest silence is in fact pre-arrest silence; (b) defendant failed to remain silent after arrested and advised of his rights; and (c) the prosecutor merely commented on the inconsistency between defendant's post-arrest statements and his trial testimony.

At the root of the controversy is the fact that defendant waited until trial to first relate to police authorities that he killed in self-defense. According to his testimony during direct examination, defendant was approached by George Grant while both were standing on a street corner and asked if he had any "reefer." Defendant answered in the negative, but then added that even if he had some, he would not give him any. Grant suddenly hit him "upside" his head with a piece of metal object in his hand. Defendant became scared and staggered back. When Grant allegedly came towards him to hit him again,

defendant pulled out his knife and stabbed the victim in the chest.

The prosecutor's theory at trial was that the aforementioned exculpatory story was offered only after defendant realized that his post-arrest statements to the police about being under the influence of alcohol and drugs were not going to be enough to ward off his conviction. Accordingly, the prosecutor cross-examined defendant about his actions after the stabbing in the following manner:

"Q. You didn't go down to 7045 Normal and tell the police that George Grant had hit you in the head with a metal object, did you?

A. No, I didn't.

Q. And you didn't meet the police at 7101 South Normal and tell them that George Grant had hit you in the head with a metal object, did you?

A. No.

Q. And you didn't go ask the police to find that metal object, did you?

A. No.

* * *

Q. You didn't take that knife down to 7045 Normal and give it to the police and say, here, I stabbed a man, but I did it in self-defense, did you?

A. No.

* * *

Q. On the 8th of November, you didn't go to the police and tell them about any metal object, did you?

A. No.

Q. On the 9th of November, you didn't go to the police and tell them you were attacked by George Grant, did you?

A. No."

It is abundantly clear from this line of questioning that a portion of what defendant characterizes as post-arrest silence during his cross-examination is in fact pre-arrest silence. As such, we must agree with the State that the prosecutor's questions concerning what defendant did *not* divulge to police authorities before he turned himself in, were proper for impeachment purposes and probative of defendant's credibility.

It is well-established that the fifth amendment, as applied to the States through the fourteenth amendment, is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility. (*Jenkins v. Anderson* (1980), 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124; *People v. Adams* (1981), 102 Ill. App. 3d 1129, 430 N.E. 2d

267; *People v. Hart* (1980), 92 Ill. App. 3d 272, 415 N.E.2d 1136.)[1] The fact that defendant was not apprehended until he surrendered himself to the police five days after the killing and the fact that defendant in those five days did not tell the police that he stabbed George Grant in self-defense is clearly probative of defendant's credibility where he testified at trial for the first time that he killed George Grant in self-defense. Comments on defendant's pre-arrest silence and the inference derived therefrom by the prosecutor in closing argument were therefore also proper. *Jenkins v. Anderson* (1980), 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124; see *People v. Sinclair* (1963), 27 Ill. 2d 505, 190 N.E.2d 298.

■ We further agree with the State that there was no violation of defendant's rights under the fifth and fourteenth amendments since the defendant did not remain silent after arrested and the prosecutor merely commented on the inconsistency between defendant's post-arrest statements and his trial testimony.

It is undisputed that defendant, after turning himself in to the police and being advised of his right to remain silent, confessed to having stabbed George Grant while under the influence of alcohol and drugs. It is also apparent from the record that defendant's post-arrest statements were inconsistent with his subsequent testimony at trial since no claim of self-defense was made at that time. Having chosen to confess to the murder of Grant after being advised of his right to remain silent, defendant cannot now claim that the State impermissibly cross-examined and commented on constitutionally protected silence.

■ In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the United States Supreme Court held that due process precludes the State from impeaching defendant's exculpatory story offered for the first time at trial by cross-examination on his failure to offer that explanation to police as an arrestee advised of his *Miranda* rights. The court further noted that every post-arrest silence is "insolubly ambiguous" since it may merely indicate the arrestee's exercise of his fifth amendment right to silence rather than an admission of no defense to incriminating circumstances. (See, *e.g., People v. Malkiewicz* (1980), 86 Ill. App. 3d 417, 408 N.E.2d 47.) However, there are well-recognized circumstances in which the State may permissibly comment on post-arrest "silence." Where a defendant does

---

[1] In *Jenkins*, the Supreme Court held a similar line of questioning proper. The defendant in that case was cross-examined by the prosecutor about his pre-arrest silence.

not remain completely silent after being advised of his *Miranda* rights, his failure to offer an exculpatory story to the police may be used for impeachment purposes. (*People v. Henson* (1978), 58 Ill. App. 3d 42, 373 N.E.2d 852; *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 384 N.E.2d 842; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.) Similarly, if defendant's exculpatory testimony at trial is inconsistent with statements he made after being advised of his right to remain silent, comment or evidence about his failure to give the same statement at that time will not violate the *Doyle* rule. *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180; *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *People v. Levan* (1981), 99 Ill. App. 3d 310, 425 N.E.2d 1010.

Like the instant case, defendant in *Henson* made an incriminating statement to police after he was arrested for rape and told of his right to remain silent. At that time the defendant stated, "I was so high that I don't remember what happened, but I guess I screwed her. That's all. I don't remember much else, but after that I walked out. (*People v. Henson* (1978), 58 Ill. App. 3d 42, 46, 373 N.E.2d 852, 855.) Later at trial, the defendant claimed that the women he was accused of raping had consented to the sexual acts. Defendant also admitted that he had failed to mention any consent by the victim in his statement to the police. The court there held that it was proper for the prosecutor to comment in his closing argument on defendant's failure to claim the defense of consent after receiving *Miranda* warnings and making post-arrest incriminating statements to the authorities.

In *Trumbull,* the arrestee made a voluntary statement that he had committed battery on complainant and cut his face when he punched him while wearing a ring. It was not until his trial that the defendant claimed for the first time that complainant had a broken pop bottle behind his back and attempted to cut him. Defendant retaliated by hitting complainant and as a result cut his face with the ring. In determining the propriety of the prosecutor's conduct during trial, the court held that it was proper to cross-examine defendant regarding his failure to mention the pop bottle any time during his post-arrest statements, and to comment upon defendant's post-arrest "silence" during closing argument, since defendant had not remained silent after arrested and advised of his rights.

We find the holdings of both *Henson* and *Trumbull* to be relevant to the instant case. Defendant here not only failed to remain completely silent, but his voluntary in-custody statements made no mention of the fact that Grant had attacked him first with a metal object.

First seeking to exculpate his actions by virtue of pleading the effects of alcohol and drugs, defendant, upon realizing that this might not be sufficient to avoid conviction, later resorted to justify the killing on the basis of self-defense. It is apparent from the record that the prosecutor's questions during cross-examination were tailored to elicit from defendant the inconsistency of his exculpatory story as well as the failure to mention to police that Grant's initial attempt to harm him had caused him to stab the assailant in self-defense. Like *Henson,* the prosecutor in his closing argument commented on defendant's omission to claim the defense of self-defense after receiving *Miranda* warnings and making post-arrest incriminating statements to the authorities. The prosecutor therefore did not comment on defendant's post-arrest silence but rather attempted to impeach defendant with respect to the inconsistence between his post-arrest statements and his in-court testimony at trial.

In *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, the Supreme Court distinguished between questioning defendant regarding post-arrest silence and questioning defendant regarding post-arrest voluntary statements. Citing to the holding in *Doyle,* the court in *Anderson* stated:

> "*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." [Citations.] 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

The Illinois Supreme Court is in accord. In *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843, where defendant claimed that the prosecutor had improperly commented on constitutionally protected silence, it was noted:

> "In the sense that reference was made to the fact that the defendant had not previously told the officers the story he told on the witness stand, it is a comment on silence, but to the extent his testimony conflicts with what he told the officer, the cross-examination did not amount to a comment on silence." *People v. Rehbein* (1978), 74 Ill. 2d 435, 439, 386 N.E.2d 39.

We find the circumstances of this case to be similar. Hence there is no basis to defendant's argument that *Doyle* is controlling here and

that the prosecutor impermissibly cross-examined and commented on constitutionally protected silence.

■■ The next issue raised by this appeal is whether defendant was properly cross-examined with regards to the fact that at the time he made incriminating statements to the police, no communication had yet transpired between defendant and his attorneys. Defendant contends that such questions insinuated to the jury that his claim of self-defense was fabricated by his lawyers right before trial.

A review of the record reveals that the questions asked by the prosecutor were merely aimed at revealing the inconsistency between defendant's admissions following his surrender to the police and his subsequent testimony at trial and as such were not improper. The trial transcript further shows that no objections were made by defense counsel at the time these questions were being asked or upon moving for a new trial. The failure to present proper and timely objection generally constitutes a waiver of error, if any. (*People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318; *People v. Adams* (1968), 41 Ill. 2d 98, 242 N.E.2d 167; *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Thus, we must conclude that even if these questions were deemed to be improper, defendant's failure to raise a timely objection constitutes a waiver and the issue cannot be advanced as a ground for review.

■■ Defendant next contends that during rebuttal argument the prosecutor impermissibly commented on inadmissible evidence in order to bolster Christopher Bates' credibility and on the fact that Bates testified despite threats of violence. Moreover, defendant maintains that the prosecutor's misstatement of the law in rebuttal argument had the effect of reducing the State's burden of proof. The State argues that in each of those instances the prosecutor's remarks were either proper comment on the evidence and inferences drawn therefrom, or invited reply to defense counsel's own over-reaching and improper comments during closing argument.

We first consider the allegation that the prosecutor made prejudicially and improper remarks about inadmissible evidence in order to bolster Christopher Bates' credibility. Defendant advances two reasons for his objection. First, since Bates' preliminary hearing testimony was not in evidence at the trial, the remarks were improper comments upon facts not in evidence. Second, Bates' testimony at the preliminary hearing was made after his motive to testify falsely arose.

We find defendant's arguments devoid of merit. A review of the record shows that although defense counsel objected to the subject remarks, he failed to state the basis for his objection. The trial court,

unaware of anything objectionable, stated that it did not know what defense counsel was objecting to and therefore had no alternative but to overrule the objection.

The function of an objection is twofold: to signify there is an issue of law and to give notice of the terms of the issue. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) Objections to evidence should especially designate the particular testimony considered objectionable and point to the objectionable features. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) Failure to make proper and timely objection to the admissions of evidence claimed to be objectionable by giving specific reason for the objection, generally constitutes a waiver of the right to object and cures the error, if any. (*People v. Bell* (1975), 27 Ill. App. 3d 171, 326 N.E.2d 507.) Since defendant in the instant case failed to point to the objectionable features of the evidence, his attempt to designate the remarks objectionable in a general manner was clearly insufficient to preserve the alleged error for review.

■ Further, an examination of the remarks objected to by the defendant shows that, read in context, the comments did not lack in propriety. Bates testified at trial that he told police that he witnessed the defendant kill Grant. A police officer also testified that he was given a statement by Bates shortly after the murder. On cross-examination, defense counsel attempted to impeach Bates through the use of excerpts of Bates' testimony at the preliminary hearing.

The fact that Bates' statements to the police were already in evidence and defense counsel had attempted to impeach the witness through the preliminary hearing transcript gave license to the prosecutor to comment in closing argument on Bates' credibility by making reference to the consistent portions of the excerpts used by defense counsel in the cross-examination of Bates. A prosecutor has the right to comment on the credibility of the witnesses. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

It is also apparent from portions of defense counsel's closing argument that the prosecutor's remarks in rebuttal concerning the fact that Bates was not lying at trial were made in direct response to defendant's closing comments and as such were clearly invited. A defendant cannot complain of statements made in rebuttal by the prosecutor which were invited by remarks of defense counsel. *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

Finally, although the defendant's objections were overruled, the prosecutor did not continue to comment further on the preliminary hearing. Thus, the only reference to that hearing was as follows: "He

told the same thing to the police, to the detectives. Look at this transcript. Out of all this testimony ***." Clearly, the State never commented on the content of the transcript. In the absence of any such reference to the content, the prosecutor could not have commented, as defendant suggests, on facts not in evidence at trial.

▮ In any event, even if the prosecutor's remarks had exceeded the bounds of proper argument, defendant would not have been prejudiced, since evidence of his guilt was so overwhelming that no other verdict could have resulted. An improper comment is not a ground for reversal unless it constitutes a material factor in the conviction, or unless it results in substantial prejudice to the defendant. The test is whether the jury would have reached a contrary verdict had the argument not been made. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) Having looked at the content in relation to the evidence, and the effect of the argument on the rights of the defendant to a fair and impartial trial, we cannot say that the comments made by the prosecutor in rebuttal argument warrant reversal of the jury's verdict.

▮ We next consider defendant's contention that the prosecutor during rebuttal argument impermissibly commented on the fact that Bates testified despite threats of violence against his person. The same arguments advanced by this court in the preceding allegation are applicable here.

A review of the excerpts at issue shows that the initial comments of the prosecutor relate to Bates' credibility. As the prosecutor has the right to comment on the credibility of witnesses in closing argument, we do not find any impropriety here. With respect to the latter comments, since defendant failed to object and raise any question concerning them in his post-trial motion, he has waived appellate review. The remainder of the argument in controversy here consists of comments on the evidence and legitimate inferences deducible therefrom. For instance, Bates testified that he could be killed for testifying against defendant and that he lied to Kenneth Graves, defendant's brother, in order to protect himself after the murder. He also stated that he was afraid of Kenneth Graves. It was therefore a fair inference that Bates was scared of testifying since he knew he had to go back to the neighborhood where the stabbing occurred after his testimony.

Moreover, as was the case in the preceding allegation, the prosecutor's remarks concerning Bates' fear and demeanor while on the witness stand were in direct response to those uttered during defense counsel's closing argument and were clearly invited. The law is clear

that one cannot provoke a reply to his own argument and then on appeal claim error. (*People v. Trimble* (1975), 27 Ill. App. 3d 353, 326 N.E.2d 437.) Since defense counsel's closing argument invited the prosecutor's rebuttal remarks, defendant is precluded from alleging error on appeal.

Lastly, even if the remarks had exceeded the bounds of proper argument, defendant would not have been prejudiced for the simple reason that he was proven guilty beyond a reasonable doubt, and no other verdict could have resulted. Additionally, no prejudice can occur where the court instructs the jury to disregard any statement or argument made by the attorneys which is not based on the evidence. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) Since after sustaining defense counsel's objections the trial court gave such instructions, any prejudice would have been cured.

Defendant's last contention regarding comments made by the prosecutor during rebuttal argument is that the prosecutor's misstatement of the law had the effect of reducing the State's burden of proof to a minor detail of no significance. We do not see anything in the excerpt in question that indicates that the remarks made by the prosecutor fell outside the legitimate bounds of argument. The gist of the comments made by the State with regards to their burden of proof was merely that it was not unreasonable or impossible to meet. Remarks similar to the ones objected to here have not been considered by the courts to be improper or to reduce the State's burden of proof. (See *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301; *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291; *People v. Green* (1983), 118 Ill. App. 3d 227, 454 N.E.2d 792.) We distinguish the case at bar from those instances where the State has been shown to make blatantly erroneous statements such as "we don't have a burden." Since this situation does not appear here, we decline to adhere to defendant's view that on the basis of the prejudice inflicted on him by these remarks alone, a new trial should be granted.

■■■ We next turn to defendant's contention that the trial court abused its discretion in allowing the certified statement of defendant's prior conviction for aggravated battery to be read to the jury.

In deciding whether to allow the use of a prior conviction for impeachment purposes, a court must first determine whether the crime is either one punishable by death or imprisonment in excess of one year, or is a crime involving dishonest or false statement. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. See also *People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377.) Evidence of a conviction of a felony punishable by death or imprisonment in excess of

one year is admissible under Rule 609(a)(1) of the Federal Rules of Evidence independent of the requirement of dishonesty or false statement of subsection (a)(2). (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Prior convictions for crimes other than for an offense based on dishonest or false statements have been held admissible on the theory that they establish a disposition on the part of the defendant to place the advancement of his individual self-interest ahead of the interest of society, and such proof may suggest a willingness to do so again on the witness stand. (*People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.) The conviction, however, is inadmissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever of the two is later. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

Where the prior conviction of an accused is for a felony which carries a possible penalty in excess of one year, and the 10-year time limitation is met, it is the province of the trial court to weigh the probative value of the conviction against the potential for unfair prejudice which might result in determining whether to permit its use. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377.) Factors normally considered by the trial court include the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the individual, and whether the crime was similar to the one charged. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) A trial judge is given considerable latitude in making the decision whether to admit evidence of a prior conviction against a defendant. *People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377.

Here, the prosecutor in rebuttal argument, read into evidence a certified copy of defendant's prior conviction for purposes of impeachment. The document stated that in 1979, defendant pleaded guilty to the charge of aggravated battery and received 30 months' probation and four days in Cook County jail for that conviction. Since aggravated battery is a felony which carries a possible penalty in excess of a year and the conviction meets the 10-year time limitation, we find no merit in defendant's argument that the trial judge abused his discretion in allowing this conviction to be read to the jury.

Furthermore, evidence of conviction for a felony punishable by death or imprisonment in excess of one year is presumed to relate to testimonial deceit. Defendant's conviction for aggravated battery only four years prior to this trial was extremely probative of his credibility.

(Defendant's argument that aggravated battery is a crime of force and is not at all probative of truth or veracity has been rejected by this court. (*People v. Hovanec* (1979), 76 Ill. App. 3d 401, 394 N.E.2d 1340.)) Admissibility of the conviction for impeachment was therefore proper assuming the trial judge found its probative value not to be substantially outweighed by the danger of unfair prejudice. While the record does not expressly indicate that the trial judge applied the aforementioned balancing test in the instant case, the court was well aware of the *Montgomery* provisions, and it must therefore be assumed that the judge gave appropriate consideration to the relevant factors. In addition, this consideration need not appear of record. *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 394 N.E.2d 1340; *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276.

Additional safeguards in the court's determination of whether to allow the prior conviction were provided when the trial judge gave the jury limiting instructions that the evidence was to be considered only insofar as it affected defendant's credibility as a witness, and not as evidence of his guilt of the offense with which he was being charged. Since under the circumstances of this case there was a dispute as to what occurred prior to the stabbing of George Grant, allowing evidence of defendant's prior conviction of aggravated battery for impeachment purposes was not an abuse of discretion where the evidence bore directly on defendant's veracity. See *People v. Blythe* (1974), 17 Ill. App. 3d 768, 308 N.E.2d 675; *People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528; *People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377.

We last consider defendant's contention that a new trial should be granted because the trial court excluded evidence of the victim's prior convictions for burglary.

Where in a prosecution for homicide, an accused relies upon self-defense and evidence has been introduced from which the jury could believe that the deceased was the assailant, evidence of the deceased's violent disposition and prior threats or misconduct directed by him toward the defendant is admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced. (*People v. Davis* (1963), 29 Ill. 2d 127, 193 N.E.2d 841.) Such circumstances have been deemed to be relevant in that they tend to show the defendant's state of mind. (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640.) Additionally, it has been held that the deceased's specific acts of violence, if known to defendant, are admissible to show the reasonableness of defendant's apprehension of danger. *People v. Gall* (1979), 79

Ill. App. 3d 823, 398 N.E.2d 1118.

However, because burglary is not ordinarily a crime of violence (*People v. Stombaugh* (1971), 132 Ill. App. 2d 859, 271 N.E.2d 69, *rev'd on other grounds* (1972), 52 Ill. 2d 130, 284 N.E.2d 640), we must agree with the State that such convictions were irrelevant to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced.

Further, here there was no evidence whatsoever that the victim had a violent disposition or temper, that defendant was priorly threatened by the victim, or that the victim's burglary convictions involved violence. There was also no evidence that defendant even knew of Grant's prior convictions. Evidence of a victim's prior convictions of a crime not involving violence have been held irrelevant in determining whether defendant reasonably believed that the use of force was necessary to prevent the deceased from killing or greatly injuring him. See, *e.g., People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177; *People v. Gossett* (1983), 115 Ill. App. 3d 655, 451 N.E.2d 280.

Finally, even if the exclusions of Grant's prior convictions for burglary had been improper, the exclusion of such evidence would not be reversible error since there was ample evidence of defendant's guilt. (*People v. Barnes* (1983), 117 Ill. App. 3d 965, 453 N.E.2d 1371.) In determining whether an accused has been prejudiced by the rejecting or exclusion of evidence, so as to require a reversal of the judgment, courts of review will look to the entire record to see if the rejected evidence could have reasonably affected the verdict, and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, a different result could not have been reached. (*People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 452 N.E.2d 32.) Based on the evidence presented in the record, defendant was proven guilty beyond any reasonable doubt, making the alleged error harmless. We see no need to disturb the jury's conviction.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and MEJDA, J.,* concur.

---

*This opinion was concurred in prior to the retirement of Justice James J. Mejda from the court.