2023 IL App (1st) 221076

SECOND DIVISION
August 29, 2023

No. 1-22-1076

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20 CR 10770 |
| | ) | |
| DOMINIQUE BOURGOUIS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County convicting defendant of aggravated battery with a firearm is affirmed; defendant's claim of plain error fails because we find no error—the trial judge's consideration of defendant's prearrest and postarrest silence did not violate defendant's rights under the United States Constitution or Illinois's law of evidence.

¶ 2    The State charged defendant, Dominique Bourgouis, with multiple counts of attempt (first degree murder) and aggravated battery with a firearm. Following a bench trial, the circuit court of Cook County found defendant guilty of aggravated battery with a firearm and sentenced her to six years' imprisonment. Defendant appeals on the sole ground the trial judge gave

improper consideration to her prearrest and postarrest silence in violation of the fifth amendment to the United States Constitution and Illinois's law of evidence.

¶ 3    For the following reasons, we affirm the trial court's judgment convicting defendant of aggravated battery with a firearm.

¶ 4                                    BACKGROUND

¶ 5    The material facts are largely undisputed. On August 12, 2020, defendant was holding a firearm and pointing it at the victim when the firearm discharged and a bullet grazed the victim's ear. At trial, defendant denied she intentionally pulled the trigger. On appeal, defendant observed that the trial judge stated that while making his guilty finding he took into consideration that defendant did not call police after the incident and that when police interviewed her she denied even knowing the victim. Defendant argues that the trial judge erred when he considered an alleged "failure" by defendant to notify police of the incident that affected her right to a fair trial by shifting the burden of proof to defendant to prove she attempted to notify police or to explain why she did not, and that any consideration of her silence violated her right to remain silent.

¶ 6    Defendant acknowledges she did not preserve the issue for review but argues the evidence is closely balanced, and defendant urges this court to consider her claim under the first prong of plain error. However, we find no error occurred; therefore, we have no need to determine whether "plain" error occurred and the parties' arguments concerning the closeness of the evidence are moot.

¶ 7    The evidence shows the victim and defendant had an "on-again, off-again" romantic relationship. On the day in question, the victim was looking through defendant's cellular telephone for evidence of infidelity and defendant was trying to retrieve it. The victim testified the altercation became physical and defendant ripped his shirt. The confrontation between the

two of them began in the victim's vehicle, moved to an alley adjacent to a local retail establishment, and ended in its parking lot—the location where the victim was actually shot.

¶ 8    The victim testified that after defendant's efforts to retrieve her phone from him became physical, he was able to extricate himself from defendant and retreat down an alley, at which time he says he saw defendant retrieve something from the victim's vehicle. The victim was walking down the alley when he heard a loud report he believed to be a firecracker. The victim went through a fence into the parking lot and saw defendant pointing something at him. The victim heard a second report, which he now knew to be a second gunshot, and felt something graze his ear. He then saw that defendant was pointing a gun at him. The victim fell to the ground at which point, he testified, defendant ran up to him, took back the phone the victim still had, and ran off. The victim identified defendant as the person who shot him.

¶ 9    Defendant testified that she ripped the victim's shirt after the victim started to choke her in response to defendant's efforts to retrieve her phone. Defendant testified it was at that time she took a gun from the victim's waistband. Defendant testified she intended to trade the gun for her phone. Defendant testified the victim threatened to throw her phone in a dumpster and she followed him down an alley where it seemed he intended to make good. Defendant testified she was pleading with the victim to return her phone when she raised the gun and pointed it at the victim. She testified the victim flinched and the gun went off, but that defendant did not intend to shoot the victim, and there was only one shot. Defendant testified she ran to the victim to check his condition but the victim yelled at her so she took her phone and left. Defendant testified the phone had a cracked screen.

¶ 10    On September 22, 2020, police arrested and interviewed defendant. Before speaking to defendant police read her rights to defendant. At one point, defendant told police she did not

know the victim and never shot anyone. During her cross-examination, the State asked defendant whether she ever called police after the incident. She responded she did not. On redirect, defense counsel asked defendant why not. She responded her phone was cracked.

¶ 11   The parties admitted various video surveillance from the area that depicts the incident into evidence.

¶ 12   Following the bench trial, the trial judge gave an oral ruling. The trial judge ruled, in pertinent part, as follows:

> "I take into consideration that the defendant had an opportunity to notify the police, chose not to. The phone was broken but I assume other people had phones in the months that precede—I'm sorry, in the months subsequent to the shooting. And when she is, in fact, talked to by the police, she denies even knowing [the victim.] Obviously, she does not have to talk to the police. She's able to assert her Fifth Amendment rights against self-incrimination but when she does, in fact, make a statement to the police, it is weighted with regard to the credibility of that particular statement."

¶ 13   The trial judge found defendant was not "credible in any material way." The trial judge convicted defendant of aggravated battery with a firearm and sentenced her to six years' imprisonment.

¶ 14   This appeal followed.

ANALYSIS

¶ 15   This is an appeal from a final judgment of conviction after a bench trial in which defendant-appellant claims the trial judge violated her right against self-incrimination under the Fifth Amendment and Illinois evidence law. Specifically, defendant argues the trial judge

impermissibly considered her prearrest silence as circumstantial evidence of her credibility as a witness and consciousness of guilt. Defendant argues the trial judge violated her constitutional right to remain silent by first "manufacturing" an invocation of that right by defendant and then using that manufactured invocation of the right to impeach her testimony at trial for failing to call police. Defendant argues she did not "fail" to call police; rather, defendant made a choice not to potentially incriminate herself as is her right, and there is no evidence that defendant did not try to contact police sometime after the incident. Defendant argues that the trial judge's consideration of an alleged "failure" to notify police of the incident affected her right to a fair trial by shifting the burden of proof to defendant to prove she attempted to notify police or to explain why she did not, and any consideration of her silence violated her right to remain silent.

¶ 16    A defendant must object contemporaneously as well as in a posttrial motion to preserve issues for our review. *People v. Lewis*, 234 Ill. 2d 32, 40 (2009). Failure to take both steps results in procedural default, or forfeiture, of the issue. *Id.*

¶ 17    Defendant acknowledges she failed to preserve the issue for review but argues the issues are reviewable as plain error. Under the plain error doctrine, this court may excuse a procedural default and consider unpreserved error where: (1) the evidence is closely balanced so as to preclude argument that an innocent person was wrongfully convicted; or (2) the alleged error affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). Our analysis initially considers whether error occurred, because in the absence of error, there can be no plain error. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010). If we find error, then we proceed to consider whether either of the two prongs of the plain-error doctrine has been satisfied. The burden of persuasion

rests with the defendant under either plain error alternative. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

¶ 18    It is the function of the trier of fact to determine the credibility of witnesses and the inferences which can be drawn from the evidence presented." *People v. Major*, 244 Ill. App. 3d 1013, 1019 (1993). We "defer to the trial court's determinations of witness credibility and to its choice of competing reasonable inferences that may be drawn from the evidence." *In re R.T.*, 313 Ill. App. 3d 422, 428-29 (2000).

> "We afford great deference to the factfinder's assessment of a witness's credibility because the factfinder is in a better position to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. [Citation.] Nonetheless, that deference does not extend to testimony that is so lacking in credibility that a reasonable doubt of defendant's guilt remains. [Citations.]" (Internal quotation marks omitted.) *People v. Carter*, 2022 IL App (1st) 210261, ¶ 49.

¶ 19    After a bench trial "we review *de novo* the question of whether the record reveals that the trial court made an affirmative mistake in its decision-making process. [Citations.]" (Internal quotation marks omitted.) *People v. Schuit*, 2016 IL App (1st) 150312, ¶ 105. In general "the standard of review for determining if an individual's constitutional rights have been violated is *de novo*." *People v. Smith*, 2023 IL App (1st) 181070, ¶ 22. We review allegations of a violation of constitutional rights at a bench trial *de novo*. See *People v. K.S.*, 387 Ill. App. 3d 570, 573 ("this court reviews *de novo* whether a defendant was denied due process and, if so, whether that denial was prejudicial").

¶ 20    We will first address the issue of whether the trial judge "manufactured" silence on defendant's part. We find that the case law clearly establishes he did not. The United States Supreme Court has held that a defendant's failure to notify police of their involvement in conduct constituting a possible crime before the defendant is arrested for that conduct is treated as an invocation of the right to remain silent under the fifth amendment to the United States Constitution. *Jenkins v. Anderson*, 447 U.S. 231, 232 (1980).

¶ 21    Moreover, *Jenkins* also addresses a defendant's allegation that the use of prearrest silence to impeach violates a defendant's fifth amendment rights. In *Jenkins*, the defendant claimed that he stabbed the victim in self-defense. *Jenkins*, 447 U.S. at 232. On cross-examination the State asked the defendant if the defendant "waited for the Police to tell them what happened?" after stabbing another person allegedly in self-defense. *Jenkins*, 447 U.S. at 233. The defendant responded he did not. *Id*. Later, the State asked the defendant how long it was before the defendant "reported the things that you have told us in Court today to anybody." *Id*. The defendant had told his probation officer two days after the incident. *Id*. The State also asked, "Did you ever go to a Police Officer or to anyone else?" to which the defendant responded, "No, I didn't." *Jenkins*, 447 U.S. at 233.

¶ 22    The issue in *Jenkins* was "whether the use of *prearrest silence* to impeach a defendant's credibility violates either the Fifth or the Fourteenth Amendment to the Constitution." (Emphasis added.) *Id*. at 232. The *Jenkins* Court analyzed the issue under the fifth amendment and, citing *Raffel v. United States*, 271 U.S. 494 (1926), ruled that the fifth amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence.

¶ 23    Furthermore, there is circumstantial evidence in this case that defendant did not contact police between the date of the incident on August 12, 2020, and September 22, 2020, when

police arrested and interviewed defendant. "Circumstantial evidence is the proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." (Emphasis and internal quotation marks omitted.) *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 99 (2008). "An inference is a factual conclusion that can rationally be drawn by considering other facts. Thus, an inference is merely a deduction that the fact finder may draw in its discretion, but is not required to draw as a matter of law." *People v. Saxon*, 374 Ill. App. 3d 409, 416 (2007).

¶ 24    Defendant testified she did not immediately call 9-1-1 after allegedly accidentally shooting the victim. There is no evidence of any interview of defendant by the police prior to September 22, 2020. The trial judge could reasonably infer from the absence of evidence of a phone call or prior interview by the police—the "other facts" the trial judge could consider—that defendant did not report the incident—the factual conclusion rationally drawn by considering those other facts. Therefore, there is evidence—circumstantial evidence—that defendant remained silent between the incident in this case and defendant's arrest by the police.

¶ 25    This finding and consideration by the trial judge did not impermissibly shift the burden of proof to defendant to prove why she chose not to inform the police of the incident.

> "The burden in a criminal case is on the prosecution to prove beyond a reasonable doubt the commission of the crime charged ***. The State always has the burden of proving, beyond a reasonable doubt, each element of an offense ***. In order to be sustained, the conviction must rest upon the strength of the people's case, not on the weakness of the defendant's. However, the prosecution is not required to offer proof as to matters unconnected with the elements of the offense." 14A Ill. Law and Prac. Criminal Law § 224.

"[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof." *Smith v. United States*, 568 U.S. 106, 112 (2013). "[A]t common law, the burden of proving affirmative defenses—*indeed, all … circumstances of justification, excuse or alleviation*—rested on the defendant." (Emphasis added.) *Dixon v. United States*, 548 U.S. 1, 8 (2006).

¶ 26    "It is well settled that a person is presumed to intend the natural and probable consequences of his deliberate acts. [Citations.] It is also well established that the requisite intent can be shown by the surrounding circumstances, including the actions of the defendant." *People v. Varnell*, 54 Ill. App. 3d 824, 827 (1977). "It is the duty of the jury to weigh the evidence, resolve inconsistencies, and make findings of fact, like the factual finding on a defendant's mental state." *People v. Ware*, 2019 IL App (1st) 160989, ¶ 49.

¶ 27    Defendant argues she lacked the requisite intent. The State only had to prove defendant intentionally pointed the gun at the victim, which defendant admitted, and pulled the trigger, which the trier of fact could reasonably infer from the surrounding circumstances, including that the gun fired while in defendant's hand. See *People v. Ware*, 2019 IL App (1st) 160989, ¶ 49 (finding that "a rational trier of fact could have found that [the] defendant shot [the victim] and that [the defendant's] actions were intentional, not reckless" where there was competing evidence whether the gun "went off" rather than being intentionally fired); *Varnell*, 54 Ill. App. 3d at 827-28 (finding that "surrounding circumstances" of the defendant firing a gun directly at a window did so with the knowledge that harm to someone in the window was practically assured by his actions). The trial judge, as the trier of fact, was free to disbelieve defendant's testimony that the gun just "went off." *Ware*, 2019 IL App (1st) 160989, ¶ 49. Defendant bore the burden to

prove any facts that alleviate her culpability—including that she never intended to shoot the victim. *Dixon*, 548 U.S. at 8.

¶ 28    The trial judge did not shift the burden of proof of the crime charged to defendant. Defendant did not have to prove that she attempted to contact police to negate an element of the offense. Moreover, defendant's conviction does not rest on the weakness of defendant's case. Defendant's conviction does not rest on evidence of whether she did not immediately tell the police it was an accident—but that is a fact that weighs in favor of finding it was not an accident. Whether and when defendant contacted police is a fact peculiarly in defendant's knowledge. Therefore, it is appropriate for defendant to bear the burden of proof on that question. *Smith*, 568 U.S. at 112. Defendant admits she pointed the gun at the victim who was shot and only disputes whether she intentionally pulled the trigger with the intent to shoot him. We note defendant has not challenged the sufficiency of the evidence used to convict her of doing exactly that.

¶ 29    The trial judge did not violate any of defendant's rights when it took into consideration that defendant chose not to notify police of this incident. "It is well-established that the Fifth Amendment, as applied to the States through the Fourteenth Amendment, is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility." *People v. Graves*, 142 Ill. App. 3d 885, 889-90 (1986) (citing *Jenkins v. Anderson*, 447 U.S. 231 (1980)).

¶ 30    Under Illinois law, evidence must be relevant to be admissible. *People v. Pinkett*, 2023 IL 127223, ¶ 28 ("Illinois Rule of Evidence 402 (eff. Jan. 1, 2011) provides that only relevant evidence is admissible."). "Under Illinois's evidentiary law, '[e]vidence of the defendant's *postarrest* silence is considered neither material nor relevant to proving or disproving the charged offense.' [Citation.]" (Emphasis added.) *People v. Pinkett*, 2023 IL 127223, ¶ 31. Under Illinois law, "a defendant cannot be impeached with his *postarrest* silence." (Emphasis added.)

*Pinkett*, 2023 IL 127223, ¶ 32. However, under Illinois law, evidence of a defendant's *prearrest* silence is relevant and admissible. *People v. Quinonez*, 2011 IL App (1st) 092333, ¶ 25 ("in contrast to a defendant's postarrest silence, his silence prior to arrest may properly be used by the State to impeach his trial testimony under Illinois law" (citing *People v. Graves*, 142 Ill. App. 3d 885, 889-90 (1986)).

¶ 31    In *Graves*, the court found the fact the defendant did not inform police he killed the victim allegedly in self-defense for five days between the killing and the defendant's surrendering himself to police was "clearly probative of [the] defendant's credibility." *Graves*, 142 Ill. App. 3d at 890. The *Graves* court held that the prosecutor's comments on the defendant's prearrest silence and the inferences therefrom were, therefore, proper. *Id*. As demonstrated below (*infra*, ¶ 30), the trial judge considered defendant's prearrest silence as it bore on defendant's credibility. Defendant's credibility is relevant and material where the conviction is based on the strength of competing witness testimony. The trial judge's consideration of evidence bearing on defendant's credibility was proper.

¶ 32    The trial judge also did not violate any of defendant's rights when it took into consideration that when defendant is "talked to by the police, she denies even knowing [the victim.]" The trial judge acknowledged that defendant could assert her fifth amendment privilege but she chose to "make a statement to police," and when she does, that statement "is weighted with regard to the credibility of that particular statement." The trial judge then found that defendant shot the victim and that "it was not accidental." The judge then stated he did "not find [defendant's] to be credible in any material way." Only then did the trial judge go on to determine whether the State had proven the elements of the offense. ("I do not find her testimony to be credible in any material way. The question I have to decide now is whether or not the State

11

has proven the elements of either attempt murder or aggravated battery beyond a reasonable doubt.").

¶ 33    The trial judge's statements make clear that the trial judge considered defendant's prearrest silence and postarrest false statement to police as evidence of defendant's credibility and not substantive evidence of defendant's guilt or her "consciousness of guilt." We find that the trial judge properly considered the evidence to prove the elements of the offense in light of defendant's (lack of) credibility. *People v. Deroo*, 2020 IL App (3d) 170163, ¶ 35 ("Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact").

¶ 34    To the extent defendant's false statement to police can be construed as postarrest silence on the question of her culpability, it was, nonetheless, proper for the trial judge to consider it. In *Graves*, the court found as follows:

"In *Doyle v. Ohio*, 426 U.S. 610 (1976), the United States Supreme Court held that due process precludes the State from impeaching defendant's exculpatory story offered for the first time at trial by cross-examination on his failure to offer that explanation to police as an arrestee advised of his *Miranda* rights. The court further noted that every post-arrest silence is 'insolubly ambiguous' since it may merely indicate the arrestee's exercise of his Fifth Amendment right to silence rather than an admission of no defense to incriminating circumstances. [Citations.] However, there are well-recognized circumstances in which the State may permissibly comment on post-arrest 'silence.' Where a defendant *does not remain completely silent* after being advised of his *Miranda* rights, his failure to offer an exculpatory story to the

police may be used for impeachment purposes. [Citations.] Similarly, if defendant's exculpatory testimony at trial is inconsistent with statements he made after being advised of his right to remain silent, comment or evidence about his failure to give the same statement at that time will not violate the *Doyle* rule. [Citations.]" (Emphasis added.) *Graves*, 142 Ill. App. 3d 885, 890–91.

¶ 35    Similarly, although "Illinois evidence law prohibits impeachment of a criminal defendant with his or her postarrest silence, regardless of whether the silence occurred before or after the defendant was given *Miranda* warnings (*People v. Boston*, 2018 IL App (1st) 140369, ¶ 84), Illinois courts have held that there are two exceptions to the general rule, where postarrest silence will be considered relevant. A defendant's postarrest silence may be used to impeach his trial testimony when the defendant makes a postarrest (pretrial) statement that is inconsistent with his exculpatory trial testimony. *Quinonez*, 2011 IL App (1st) 092333, ¶ 27.

¶ 36    In this case, defendant did not remain silent after receiving *Miranda* warnings. Instead, defendant initially told police she did not know the victim and that she never shot anyone. At trial, defendant testified she did know the victim, and she did hold the gun that shot the victim but the gun just "went off." Defendant's exculpatory statements at trial are inconsistent with defendant's postarrest, pretrial statements that she made after being advised of her *Miranda* rights. Therefore, the trial judge's consideration of defendant's failure to give the same statement before and at trial as it bears on defendant's credibility does not violate the fifth amendment. *Id.*

¶ 37    As the *Graves* court further explained:

    "In *Anderson v. Charles*, 447 U.S. 404 (1980), the Supreme Court distinguished between questioning defendant regarding post-arrest silence and

questioning defendant regarding post-arrest voluntary statements. Citing to the holding in *Doyle,* the court in *Anderson* stated:

> '*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.' [Citation.]" *Graves*, 142 Ill. App. 3d at 892.

¶ 38    The *Graves* court also found that Illinois law is in accord with the Supreme Court's holding regarding postarrest voluntary statements. The *Graves* court wrote:

> "The Illinois Supreme Court is in accord. In *People v. Rehbein*, 74 Ill. 2d 435 (1978), where defendant claimed that the prosecutor had improperly commented on constitutionally protected silence, it was noted:
>
> > 'In the sense that reference was made to the fact that the defendant had not previously told the officers the story he told on the witness stand, it is a comment on silence, but to the extent his testimony conflicts with what he told the officer, the cross-examination did *not* amount to a comment on silence.' " (Emphasis added.) *Graves*, 142 Ill. App. 3d at 892.

¶ 39    Thus, under both federal constitutional law and Illinois law, the trial judge's consideration of the fact that "when she is, in fact, talked to by the police, she denies even

knowing [the victim]" was not improper. See also *Jenkins*, 447 U.S. at 238 ("impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial").

¶ 40    Defendant failed to properly preserve these issues for review but asks this court to review them for plain error. "The first step in plain-error review is determining whether an error occurred." *People v. Mosley*, 2023 IL App (1st) 200309, ¶ 31. Without error, "there can be no plain error," *Id*. (quoting *People v. Thompson*, 2015 IL App (1st) 122265, ¶ 34). We have found that no error occurred in the trial court's consideration of defendant's prearrest silence and postarrest statement under either federal or Illinois law. As there was no error, there can be no plain error. Therefore, the judgment of the circuit court of Cook County is affirmed.

¶ 41                      CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 43    Affirmed.